**Tracey Jo Petriskie MALONE,
Plaintiff–Appellant,**

v.

**Roger Dale MALONE, Defendant–
Appellee.**

Court of Appeals of Tennessee,
Western Section, at Jackson.

July 9, 1992.

Application for Permission to Appeal
Denied by Supreme Court
Oct. 26, 1992.

Tracy P. Malone, Daniel Loyd Taylor, Memphis, for plaintiff-appellant.

Stevan L. Black, Memphis, for defendant-appellee.

CRAWFORD, Judge.

This case involves a dispute over child custody and child support as decreed by the trial court in a divorce case.

Plaintiff, Tracey Jo Petriskie Malone (Wife), and Defendant, Roger Dale Malone

(Husband), were married March 3, 1979, separated April 8, 1990 and divorced by decree entered October 31, 1991. The union produced a son, James Brandon Malone, age eight at the time of trial, and two daughters, Brittany Colleen Malone, age four at the time of trial, and McKenzie Brooke Malone, age three at the time of trial.

When the parties married, Wife was employed part-time and was a full-time student. Wife graduated from Memphis State University Law School in 1982 and began practicing law in Bartlett, Tennessee where she was still practicing at the time of trial. Wife is thirty-three years of age, earned approximately $106,000.00 adjusted gross income in the year 1990 and was averaging approximately $7,000.00 per month adjusted gross income at the time of trial.

Husband at the time of the marriage was employed by Liberty Pools, a closely held corporation owned by his father. His father died shortly after the parties marriage and Husband purchased the business, continued conducting it as a closely held corporation and was so doing at the time of trial. The record establishes that he earned approximately $3,300.00 per month adjusted gross income from this employment. Husband is thirty-four years of age.

Essentially, the marital estate of the parties was equally divided and both parties had substantial cash from the proceeds of sale of the real estate.

■ Wife's appeal presents two issues for review. The first issue for review is whether the trial court erred in awarding the parties joint custody of the three minor children.

The final decree provides:

The Husband and the Wife will have joint legal and physical custody of the parties' minor children, with the Husband having physical custody of the children approximately fifty (50%) percent of the time.

Wife asserts that she should have been awarded custody of the children and that Husband should have reasonable visitation rights. She argues that this was the arrangement that existed from the time the parties separated until the time of the final decree and that it was a satisfactory arrangement.

The record reflects that during the school year, the son attends school and is kept after school by Wife's parents. The two younger children were in day care until picked up by Wife or, in the case of Husband's visitation, by Husband. There was no proof in the record of any arrangements in the contemplation of the parties as to the care of the children. Husband and Wife were living in apartments at the time of trial and both testified that they wished to purchase homes in order to have adequate room for the children. The proof established, and Husband conceded, that Wife was the primary caregiver for the children during the marriage. The proof also showed that after the separation Husband became quite attentive to the children and became involved in all the aspects of parenthood. It is apparent from the record that both parties dearly love their children and are fit and proper persons to have custody of the children.

In child custody cases, the welfare and best interests of the children are the paramount concerns. The determination of the children's best interests must turn on the particular facts of each case. *Holloway v. Bradley*, 190 Tenn. 565, 230 S.W.2d 1003 (1950). In *Bah v. Bah*, 668 S.W.2d 663 (Tenn.App.1983), this Court said:

We adopt what we believe is a common sense approach to custody, one which we will call the doctrine of "comparative fitness." The paramount concern in child custody cases is the welfare and best interest of the child. *Mollish v. Mollish*, 494 S.W.2d 145, 151 (Tenn.App.1972). There are literally thousands of things that must be taken into consideration in the lives of young children, *Smith v. Smith*, 188 Tenn. 430, 437, 220 S.W.2d 627, 630 (1949), and these factors must be reviewed on a comparative approach:

Fitness for custodial responsibilities is *largely a comparative matter*. No human being is deemed perfect, hence no human can be deemed a perfectly

fit custodian. Necessarily, therefore, the courts must determine which of two or more available custodians is more or less fit than others.

*Edwards v. Edwards*, 501 S.W.2d 283, 290–91 (Tenn.App.1973) (emphasis supplied).

668 S.W.2d at 666.

In the instant case, the trial court awarded joint custody to the parties and also ordered that each have physical custody approximately fifty percent (50%) of the time. Although joint custody is authorized by statute, this Court on previous occasions has noted the shortcomings of such an arrangement. In *Dodd v. Dodd*, 737 S.W.2d 286 (Tenn.App.1987), this Court said:

> ... Notwithstanding the fact that joint custody of minor children is permitted by statute, we have found it necessary to reverse a large number of such decrees during the past several years. The experience of this Court has been that joint custody rarely, if ever, works—for the children. There needs to be one residence, one haven in all the storms of life, including those storms whipped up by the winds of divorce. There needs to be one parent with primary control and responsibility for the upbringing of the parties' children, whenever possible. Custody, in reality, means responsibility for the care, nurture and development of the mental, emotional and physical needs of the child. The custodial parent should expect and receive cooperation and assistance from the non-custodial parent in every respect to serve the best interests of their child or children.

737 S.W.2d at 289–90.

In the case before us, the oldest child is in school and the selection of the school he attends will be dependent upon his residence in a particular district. The record reflects that the parties hereto reside in different school districts and a joint custody arrangement under these circumstances has all of the earmarks of disruption in the life of this young man. The same thing can be said for the oldest daughter who will be starting kindergarten shortly.

Apparently the trial court failed to give due consideration to the fact that the mother had been the primary source of care for these children throughout their life and particularly failed to give some consideration to the "tender years" doctrine for the girls ages four and three. While the "tender years" doctrine is not a controlling factor, it is certainly something that should be considered by the court in making an award of custody. See *Bah v. Bah*, 668 S.W.2d 663 (Tenn.App.1983).

While the record before us does not present a picture of a clashing, stormy relationship between these parties, it does reflect that the parties have some difficulty in reaching agreements. For example, the parties even disagree as to whether they have a disagreement concerning the older child's school attendance. Situations such as this do not give this Court confidence that an arrangement for joint custody is a workable solution. Parenthood requires a multitude of decisions in the day to day care of children. The best person to make these decisions is the person in direct control of the children. Passing the children back and forth between the parents on a mandatory schedule can only lead to disruption in their lives and undermine the stability of their home life. Neither this Court nor the trial court can make a decision concerning custody of these children that will be as desirable as their being a part of a stable two parent home. We must strive to do the next best thing and, considering all of the circumstances involved, the best interests of these children are served by awarding custody to Wife. Husband is entitled to and shall be accorded liberal visitation rights which shall include a proportionate number of holidays, weekends and vacation periods. If the parties cannot agree upon visitation, the trial court on remand shall set the visitation schedule.

■ The second issue presented by Wife is whether the trial court erred in the amount of child support awarded and in failing to order that Husband pay an equal

share of uninsured medical and related bills.

The final decree provided:

Husband will be required to pay $225 per month as child support for each of the parties' three minor children. In addition, he will be required to maintain hospitalization and major medical insurance for the children. This currently costs Husband $324.82 per month. Thus, this is a total monthly support obligation of $1,000. Wife will be required to pay all uninsured medical, psychological, dental, and other reasonable and necessary medical expenses for the children.

Award of child support is controlled by the provisions of T.C.A. § 36–5–101(e) which provides:

(1) In making its determination concerning the amount of support of any minor child or children of the parties, the court shall apply as a ·rebuttable presumption the child support guidelines as provided in this subsection. If the court finds that evidence is sufficient to rebut this presumption, the court shall make a written finding that the application of the child support guidelines would be unjust or inappropriate in that particular case, in order to provide for the best interest of the child(ren) or the equity between the parties.

(2) Beginning October 13, 1989, the child support guidelines promulgated by the department pursuant to the rulemaking provisions of the Uniform Administrative Procedures Act, compiled in title 4, chapter 5, shall be the guidelines that courts shall apply as a rebuttable presumption in child support cases. The supreme court may promulgate rules to replace the child support guidelines of the department on or before October 1, 1990. If the supreme court does not promulgate such rules, then the guidelines promulgated by the department will continue to be applied by courts in child support cases.

Rule 1240–2–4–.03, *Guidelines for Calculating Child Support Awards* provides in pertinent part:

(1) For clarity, the parent with whom the child(ren) live primarily will be referred to as the obligee and the parent with whom the child(ren) do not primarily live will be referred to as the obligor.

(2) The child support award is based on a flat percentage of the net income (as defined in paragraph 4 below) of the obligor depending on the number of children to be supported. *This formula presumes that the obligee will be expending at least an equal percentage of net income for the support of children from whom support is sought.*

\*　　\*　　\*　　\*　　\*　　\*

(4) Net income is calculated by subtracting from gross income of the obligor FICA (7.51% for the regular wage earners and 13.02% for self-employed, as of 1989, or any amount subsequently set by federal law as FICA tax), the amount of withholding tax deducted for a single wage earner claiming one deduction (copies of appropriate table will be provided to courts with guidelines), and the amount of child support actually being paid pursuant to a previous order of child support for other children. This amount shall be calculated on a monthly basis, but payment may be ordered to be weekly or biweekly.

(5) After determining the net income of the obligor, that amount is to be rounded up to the next dollar. That amount is then multiplied by the percentage below that corresponds to the number of children to be supported. The percentages are:

# of children 1 2 3 4 5 or more

% of income 21% 32% 41% 46% 50%

After this calculation is made, if there are no additions to be made pursuant to paragraph 1240–2–4–.04 below, then this is the amount of the child support award. (Emphasis supplied.)

Tenn.Comp.R. & Reg., Child Support Guidelines.

Neither of the parties in their brief discussed the child support guidelines and the record does not reflect that at trial they attempted to determine the net income of either of the parties in order to determine the presumed correct amount of support. The trial court in the decree did not find

the amount of support based upon the guidelines nor did it make written findings that the application of the guidelines would be unjust or inappropriate as required in T.C.A. § 36–5–101(e)(1). Therefore, this case must be remanded to the trial court for a determination of the amount of child support based upon the the Child Support Guidelines or if they are not appropriate, written findings by the trial court as required by the statute. Pending the order of the trial court in conformance with this opinion, the present order of support shall remain in full force and effect.

The decree of the trial court awarding joint custody of the minor children is vacated and Appellant is awarded custody of the children. Appellee is granted liberal visitation rights to be determined by the trial court in the absence of agreement by the parties. The case is remanded to the trial court for such further proceedings as may be necessary including the determination of the proper amount of child support consistent with this opinion. Costs of appeal are assessed equally against the parties.

HIGHERS and FARMER, JJ., concur.