# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### November 8, 2001 Session

## NATALIE VARBANOFF (COKER) v. KENNETH ALAN VARBANOFF

**A Direct Appeal from the Chancery Court for Rutherford County**
**No. 97DR-1333     The Honorable Royce Taylor, Chancellor**

---

### No. M2001-00723-COA-R3-CV - Filed February 1, 2002

---

In a post-divorce proceeding, mother filed a petition requesting, among other things, that her youngest child be allowed to go to a private school at her expense rather than a public school. After a non-jury trial, the trial court found that it was in the best interest of the youngest child to remain in a public school. Mother has appealed. We affirm.

**Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Christopher Kim Thompson, Murfreesboro, For Appellant, Natalie Varbanoff (Coker)

Daryl M. South, Murfreesboro, For Appellee, Kenneth Alan Varbanoff

### OPINION

The appellant, Natalie Coker Varbanoff ("Mother"), and appellee, Kenneth Alan Varbanoff ("Father"), were divorced on July 27, 1998, and have two (2) minor children. The final order parenting plan entered into by the parties provides that education decisions affecting their children will be jointly made. On December 14, 2000, Mother filed a "Petition to Enforce Parenting Plan and Marital Dissolution Agreement and to Find Defendant in Contempt." Mother's petition provides in pertinent part:

> 8. The plaintiff at this time would like to place her daughter, Danielle, in a private school known as Middle Tennessee Christian. The basis for the plaintiff choosing a private school over a public school is that among other things, Middle Tennessee Christian offers a better quality educational program with smaller classroom environments as well as other opportunities for growth.

In addition, the son, Adam, is currently attending Middle Tennessee Christian. Plaintiff has inquired with defendant whether he would agree to Danielle enrolling in Middle Tennessee Christian. Defendant's response has been that he would not agree for the same reasons as he opposed Nathan (sic) entering into Middle Tennessee Christian.

9. Your plaintiff would show that it is imperative that the school issue be resolved before the designated enrollment period so as to serve the best interests of the child.

On February 6, 2001, Father filed an answer and counter-petition admitting "that Plaintiff . . . would like to place the parties' daughter in MTCS and . . . that the parties older son already attends MTCS." However, Father denied that "his reasons for not wanting his daughter to attend MTCS are the exact same as for not wanting his son to go." On February 7, 2001, Mother filed an answer to Father's counter-petition[1] and on February 8, 2001, a non-jury trial was held. The trial court's order filed on February 22, 2001, provides in pertinent part:

1. That the petitioner, Natalie Coker's request that the daughter Danielle be allowed to go to Middle Tennessee Christian School is denied and that the daughter shall go to public school, namely Siegel, as requested by the father, Kenneth Varbanoff.

On February 23, 2001, Father filed an "Objection to Order" disputing some of the language contained in the trial court's February 22, 2001 order, which was prepared and submitted by Mother. On February 27, 2001, Mother filed a response to Father's objection. After an evidentiary hearing on April 6, 2001, the trial court entered an order which was filed on May 8, 2001, and provides in pertinent part:

After hearing all the proof presented by the parties and hearing arguments of counsel for the parties in this cause, the Court finds:

1. That it is in the best interest of Danielle to attend Siegel Middle School. This may change at the end of middle school and if the parties cannot agree then they may return to Court for a determination on High School.

\* \* \*

---

[1] The trial court's order dismissed the counter-petition and Father has presented no issue concerning the counter-petition.

9. That the Objection to Order filed by defendant and heard on April 6, 2001 shall be treated as a motion to alter or amend pursuant to Rule 59 of the Tennessee Rules of Civil Procedure.

Mother has appealed and raises the following one (1) issue for review as stated in her brief:

1. Whether the trial court erred in finding that the best interest of the minor child was not to go to a private school as requested by the petitioner, Natalie Varbanoff (Coker).

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

The proper rule is to determine the best interest of the child when reviewing joint custody cases involving the issue of whether a child should be placed in a public or private school. The welfare and best interest of the child are the paramount concerns and the determination of the child's best interest must turn on the particular facts of each case. *See In re Parsons*, 914 S.W.2d 889, 893 (Tenn. Ct. App. 1995)(citing *Holloway v. Bradley*, 230 S.W.2d 1003 (Tenn. 1950)); *see also Bah v. Bah*, 668 S.W.2d 663, 665 (Tenn. Ct. App. 1983).

We will now summarize the testimony of each witness.

Mother testified at trial that she wants Danielle to attend Middle Tennessee Christian School (hereinafter "MTCS") for the same reasons that her older son attends the school. She explained that MTCS is "a small private, good academic environment." She stated that MTCS has high test averages and that "[t]he kids progress into college at a higher rate, and the scholarship program is really good." However, on cross-examination, Mother admitted that she could not compare the qualities of MTCS against those of the public school, Siegel, because Siegel was still under construction. Mother also stated that she would like Danielle to go to the same school as her older brother because having both children in the same school with the same vacation schedules would be more convenient for the parents than having each child in a different school. Additionally, Mother agreed to pay the entire cost of Danielle's private education at MTCS.

Father testified that MTCS is "behind the times as far as [he is] concerned as to the academics that they do offer, the facilities that they have to offer, and also the social development that's very important to the children at this time in their life." Father explained that he has researched information on other public schools in the area from the County Board of Education, and that Siegel will "have a computer for every five children in their classrooms, which will probably put six computers in each classroom[, and] [t]hey will be internet connected." In comparison, he stated that "[i]f you go to MTCS, there are 25 computers on tables strewn around the wall, slow by today's standards because it doesn't take long for them to get out of date. None of them are Internet capable. None of the children are allowed to access the Internet at any time."

Furthermore, Father testified in pertinent part:

[M]y son had to take his own drum [to MTCS] to be in a pep band that consisted of about five kids to play just yesterday because the school can't afford a drum. The drum that was there was another child's, that had to go back finally to his home. Their band room is a little portable building that you fall over chairs in trying to squeeze into.

The new Siegel middle school has a wonderful auditorium. It looks like TPAC. If you can envision what I've seen of the plans that they've submitted to me – I talked to Mr. Ed Shirley down at the board of education. He gave me a beautiful floor layout. Go over to the Blackman High School. This will be comparable.

It's acoustically correct. It's professionally lighted. They have sound and video booths. When you go to that stage, you're going to see a performance if it's your child. You're not going to be in a gymnasium that's too small, and the seating is uncomfortable, and certainly not acoustically correct.

My daughter loves to dance. Performances and everything else like that will be offered [at Siegel] in a very professional and comfortable atmosphere.

* * *

MTC forbids dance.

According to Father, Danielle has "quite a few" friends at the public school she is currently attending and that many of her friends will be going to Siegel next year because of zoning. He commented that the "new Siegel school will offer new furnishings, new books, a media center, an auditorium where [Danielle] can perform things that she loves to do, a gymnasium where she can perform very well, you know, those activities that she enjoys doing, too."

After the parties testified in this matter, the trial court made the following ruling from the bench which we state in pertinent part:

Well, let me say this:

I have to decide these cases based upon what comes into court here. And I haven't heard a lot that's other than the parties' opinions. There's no testimony from anybody at either school or the county system or Middle Tennessee Christian School as to what Danielle would be offered and what is available.

-4-

Obviously, Mr. Varbanoff has some concerns about it. He's been there and investigated it. From what I've heard here today, I think it's going to be in Danielle's best interest to attend Siegel at the beginning of this school year.

Certainly, that may change at the end of middle school, if they cannot agree on the high school, if Middle Tennessee Christian offers a better program for her at that time or whatever.

But from what I've heard here today, I have some concerns about her participation at Middle Tennessee Christian School. And I really haven't had much to go on.

So I'm going to determine since they can't agree, that she would continue to go to public school. She's been going to Mitchell-Nelson. She'll continue in middle school at Siegel for the next two years. Then if they can't agree on high school, we may be back here.

The evidence does not preponderate against the trial court's findings that it is in Danielle's best interest to go to Siegel Middle School. Accordingly, the order of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are assessed against the appellant, Natalie Coker Varbanoff, and her surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.